## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| MARYELLEN FARRELLY, individually and on behalf of all others similarly situated, | ) ) ) | **Case No. 2:10-cv-12809-MOB-MJH** |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| BRUCE BARRETT, DANIEL FOLLIS, JAMES AUSMAN, RICHARD SORENSEN, JOHN JUMPER, SOMANETICS CORPORATION,  UNITED STATES SURGICAL CORPORATION, and COVIDIEN DE CORP., | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CLASS CERTIFICATION AND FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES

Plaintiff and Class representative Maryellen Farrelly ("Plaintiff"), as an individual and on behalf of a proposed Class of herself and all other persons similarly situated, hereby moves the Court for the entry of an Order:  (a) finally approving the Settlement[1] as set forth in the Stipulation as fair, reasonable and adequate and in the best interests of the Class; (b) finally certifying a non-opt out class consisting of all record and beneficial holders of Somanetics Corporation ("Somanetics" or the "Company") common stock, excluding Defendants and their affiliates, between June 16, 2010 and the date of the consummation of the Merger, as defined below (the "Class");[2] (c) dismissing this Action[3] with prejudice and extinguishing and releasing

---

[1]    All capitalized terms used herein and not otherwise defined herein shall have the same meaning ascribed to them in the Stipulation.

[2]    The Class consists of "any and all record and beneficial holders of Somanetics common stock, their respective successors in interest, successors, predecessors in interest, predecessors,

all the Settled Claims as set forth in the Stipulation; and (d) if the Settlement is approved, awarding to Plaintiffs' counsel[4] negotiated attorneys' fees and expenses in the aggregate amount of $315,000 for the substantial benefit conferred upon the Settlement Class resulting from their prosecution and settlement of the Actions (the "Unopposed Motion").  The proposed class action settlement resolves all of the claims pending in this Court, as well as in the putative class action filed in the 6th Judicial Circuit Court of Oakland County, State of Michigan, captioned *Stanley Manne v. Somanetics Corp. et al.,* Civil Action No. 10-111464-CZ.

As set forth more fully in Plaintiff's accompanying brief and exhibits in support of Plaintiff's Unopposed Motion, Plaintiff submits that the proposed settlement is fair, reasonable and adequate and in the best interests of Somanetics' shareholders.

Accordingly, Plaintiff respectfully requests the Unopposed Motion be granted.

---

representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them, together with their predecessors and successors and assigns, who held Somanetics common stock at any time between and including June 16, 2010, and the date of consummation of the Merger, but excluding Defendants and their respective affiliates." The Class definition was preliminarily approved for settlement purposes by this Court on July 8, 2011 and Plaintiff's Preliminary Approval Motion was granted.  *See* Scheduling Order, DE # 27.

[3]     The Settlement resolves all of the claims pending before this Court, as well as claims in a similar putative class action filed in the 6th Judicial Circuit of Oakland County, State Court of Michigan, captioned *Stanley Manne v. Somanetics Corp. et al.,* Civil Action No. 10-111464-CZ (the "State Action," and collectively with this Action, the "Actions").

[4]     "Plaintiffs' counsel" includes counsel in both Actions including Levi & Korsinsky LLP, The Briscoe Law Firm, PLLC, Cash, Powers, Taylor, LLC and liaison counsel, the Miller Law Firm in this Action and in the State Action, Holzer Holzer & Fistel LLC, Faruqi & Faruqi, LLP, and liaison counsel, Stephen W. Wasinger, PC.

Dated:  September 27, 2011                THE MILLER LAW FIRM
                                          /s/ Marc L. Newman
                                          Marc L. Newman (P51393)
                                          Miller Building
                                          950 West University Drive
                                          Suite 300
                                          Rochester, MI 48307
                                          Telephone: (248) 841-2200
                                          Facsimile: (248) 652-2852
                                          mln@millerlawpc.com

                                          *Liaison Counsel for Plaintiff*

                                          LEVI & KORSINSKY, LLP
                                          Eduard Korsinsky, Esq.
                                          Shannon L. Hopkins, Esq.
                                          Allen Schwartz, Esq.
                                          30 Broad Street, 15th Floor
                                          New York, NY 1004
                                          Tel.  (212)363-7500

                                          THE BRISCOE LAW FIRM, PLLC
                                          Willie C. Briscoe
                                          8117 Preston Road, Suite 300
                                          Dallas, Texas 75225
                                          Tel.  (214) 706-9314

                                          CASH, POWERS, TAYLOR, LLC
                                          Patrick Powers
                                          Mark Taylor
                                          8150 North Central Expressway
                                          Suite 15751
                                          Dallas, Texas 75206
                                          Tel.:  (214) 239-8900

                                          *Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

MARYELLEN FARRELLY, individually and )
on behalf of all others similarly situated, )
            )     **Case No. 2:10-cv-12809-MOB-MJH**
                 Plaintiff, )
            )
v.                      )
            )
BRUCE BARRETT, DANIEL FOLLIS, )
JAMES AUSMAN, RICHARD SORENSEN, )
JOHN JUMPER, SOMANETICS )
CORPORATION,  UNITED STATES )
SURGICAL CORPORATION, and )
COVIDIEN DE CORP., )
            )
                Defendants. )
            )
            )
_____ )

**MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION**
**FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CLASS**
**CERTIFICATION AND FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES**

## STATEMENT OF ISSUES PRESENTED

1.  Whether the Court should approve the proposed settlement as fair, adequate, and reasonable?

    Plaintiff answers "Yes."

2.  Whether the Court should certify the Settlement Class for purposes of the settlement?

    Plaintiff answers "Yes."

3.  Whether the Court should approve Plaintiff's counsel's request for the negotiated amount of attorneys' fees and reimbursement of expenses as fair and reasonable?

    Plaintiff answers "Yes."

## <u>MOST CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

*Bowling v. Pfizer, Inc.,* 102 F.3d 777 (6th Cir. 1996).

*In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508 (E.D. Mich. 2003).

*Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970).

*Smillie v. Park Chemical Co.*, 710 F2d 271 (6th Cir. 1983).

*Williams v. Vukovich,* 720 F.2d 909 (6th Cir. 1983).

Federal Rule of Civil Procedure 23.

## I.      INTRODUCTION

Plaintiff Maryellen Farrelly ("Plaintiff") hereby respectfully submits this memorandum in support of her Unopposed Motion for Final Approval of Class Action Settlement and for an Award of Attorneys' Fees and Expenses.  Plaintiff seeks entry of the Order and Final Judgment (the "Order"):[5] (a) finally approving the Settlement[6] as set forth in the Stipulation as fair, reasonable and adequate and in the best interests of the Class; (b) finally certifying a non-opt out class consisting of all record and beneficial holders of Somanetics Corporation ("Somanetics" or the "Company") common stock, excluding Defendants and their affiliates, between June 16, 2010 and the date of the consummation of the Merger, as defined below (the "Settlement Class");[7] (c) dismissing this Action[8] with prejudice and extinguishing and releasing all the Settled Claims as set

---

[5]       The Order is attached as Exhibit 1 to the Declaration of Shannon L. Hopkins in Support of Plaintiff's Motion for Final Approval of Class Action Settlement, Class Certification, and for an Award of Attorneys' Fees ("Hopkins Decl." or "Hopkins Declaration"), submitted herewith, as well as Exhibit D to the Stipulation and Agreement of Compromise, Settlement and Release of Claims (the "Stipulation") dated June 17 and 23, 2011, filed with the Court concurrently with Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Motion"), dated June 28, 2011.

[6]       All capitalized terms used herein and not otherwise defined herein shall have the same meaning ascribed to them in the Stipulation.

[7]       The Class consists of "any and all record and beneficial holders of Somanetics common stock, their respective successors in interest, successors, predecessors in interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them, together with their predecessors and successors and assigns, who held Somanetics common stock at any time between and including June 16, 2010, and the date of consummation of the Merger, but excluding Defendants and their respective affiliates." The Class definition was preliminarily approved for settlement purposes by this Court on July 8, 2011 and Plaintiff's Preliminary Approval Motion was granted.  *See* Scheduling Order, DE # 27.

[8]       The Settlement resolves all of the claims pending before this Court, as well as claims in a similar putative class action filed in the 6th Judicial Circuit of Oakland

3

forth in the Stipulation; and (d) if the Settlement is approved, awarding to Plaintiffs' counsel[9] negotiated attorneys' fees and expenses in the aggregate amount of $315,000 for the substantial benefit conferred upon the Settlement Class resulting from their prosecution and settlement of the Actions.

As explained below, Plaintiffs' counsel performed an extensive investigation into Defendants' actions in connection with the agreement and plan of merger between Somanetics and Covidien plc ("Covidien") pursuant to which Covidien, through its wholly owned subsidiaries, acquired all of the outstanding shares of Somanetics common stock for $25.00 per share in an all-cash tender offer (the "Tender Offer") and Somanetics then merged into a wholly-owned subsidiary of Covidien (the "Merger"). Through Plaintiffs' counsel's efforts and solely on a contingent basis, Plaintiff and the Class received the benefit of additional material disclosures concerning the then-proposed Tender Offer prior to tendering their shares.  Plaintiffs' counsel in the Actions, in consultation with their financial and valuation experts, thoroughly analyzed:  (i) all of the filings made with the United States Securities and Exchange Commission ("SEC") concerning the Merger, including the Merger Agreement and tender offer documents; (ii) Company press releases, analyst commentary and other public documents; and (iii) non-public documents produced by Defendants relevant to the Tender Offer and Merger, including minutes from the Somanetics board of directors meetings concerning the

---

County, State Court of Michigan, captioned *Stanley Manne v. Somanetics Corp. et al.,* Civil Action No. 10-111464-CZ (the "State Action," and collectively with this Action, the "Actions").

[9]     "Plaintiffs' counsel" includes counsel in both Actions including Levi & Korsinsky, LLP, The Briscoe Law Firm, PLLC, Cash, Powers, Taylor, LLC and liaison counsel, the Miller Law Firm in this Action and in the State Action, Holzer Holzer & Fistel LLC, Faruqi & Faruqi, LLP, and liaison counsel, Stephen W. Wasinger, PC.

Merger and the financial analyses performed by the Company's banker in connection with rendering its fairness opinion.  As a result of their investigations, Plaintiffs' counsel determined that the $25.00 per share price was within the range of fairness and, thus, there was a low likelihood of success on a damages claim.[10]  Counsel did, however, determine that the disclosures pertaining to the Tender Offer and Merger provided to the Company's public shareholders were inadequate and prevented shareholders from making an informed decision regarding whether to tender their shares in the Tender Offer.  Accordingly, Plaintiffs and their counsel demanded that defendants disclose enough information to Somanetics' shareholders to permit them to make an informed decision about whether to tender their Somanetics shares in the Tender Offer.

After vigorous litigation and arm's-length negotiations, Defendants agreed to provide additional material information to Somanetics shareholders concerning the Tender Offer and the Merger prior to the Tender Offer expiration, including additional information concerning (i) Somanetics' financial projections prepared by the Company's management and provided to and used by Leerink Swann LLC ("Leerink"), the Company's financial advisor, in connection with rendering its fairness opinion; (ii) the key inputs and multiples Leerink used in its various financial analyses concerning the Merger, including the *Selected Companies Analysis*, the *Selected Transactions Analysis*, and the *Illustrative Discounted Cash Flow* analysis; and (iii) the process leading up to the signing of the merger agreement with Covidien.  These additional disclosures were

---

[10]     For additional details regarding the support and work of Plaintiffs' financial expert and the benefit of the disclosures obtained through prosecution of the Actions, Plaintiff respectfully refers the Court to the Affidavit of Matthew Morris which was originally filed in the State Action and attached as Exhibit 2 to the Hopkins Declaration. ("Morris Aff.").

important to shareholders in their evaluation of the Tender Offer and the Merger, and ensured that Somanetics' shareholders had in their possession all the requisite information necessary to make an informed decision prior to the expiration of the Tender Offer on July 27, 2010.  As a result of the substantial benefits achieved through the supplemental disclosures, Plaintiffs' counsel believes the Settlement is fair, reasonable and adequate and in the best interests of the Settlement Class.

Moreover, members of the Settlement Class appear to agree with counsel's recommendation.  Pursuant to the Scheduling Order, notice was disseminated to approximately 5,962 potential class members who were record holders of Somanetics common stock during the Settlement Class Period.[11]  As part of the dissemination of the notice, the Scheduling Order required that additional copies of the Notice should be provided to any record holder for distribution to beneficial holders and that Defendants should mail additional copies of the Notice to beneficial owners at addresses provided by the record holders.  Approximately 270 of the total notices were provided to such record holders.  Sylvester Aff., ¶ 8.  At the expiration of the time to object, ***not one single former Somanetics shareholder had filed an objection to any aspect of the Settlement***, demonstrating that the Class agrees that the Settlement is fair, reasonable and adequate.

Accordingly, Plaintiff asks the Court to approve the Settlement, certify the Settlement Class and approve the request of negotiated attorneys' fees.

---

[11]     *See* Affidavit of Carole K. Sylvester re Mailing of the Notice of Pendency of Class Action, Proposed Class Action Determination, Proposed Settlement of Class Action, Settlement Hearing and Right to Appear, and Internet Posting (the "Sylvester Aff."), ¶ 9.

## II.    BACKGROUND

### A.    Prosecution of the Actions

On June 16, 2010, Somanetics announced that the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with United States Surgical Corporation ("USSC"), a wholly-owned indirect subsidiary of Covidien, and Covidien DE Corp ("Sub"), a newly-formed wholly-owned subsidiary of USSC.  Hopkins Decl., ¶ 3.  Pursuant to the Merger Agreement, Covidien, through Sub, would acquire all of the outstanding shares of Somanetics common stock for $25.00 per share in an all-cash tender offer, and Sub would merge with and into Somanetics, with Somanetics surviving as the wholly-owned subsidiary of USSC.  *Id.*

On June 25, 2010, Covidien, through Sub, filed an Offer to Purchase commencing the Tender Offer.  Hopkins Decl., ¶ 4.  Also on June 25, 2010, Somanetics filed a Schedule 14D-9 Recommendation Statement (the "Recommendation Statement") with the SEC pursuant to which the Company's Board of Directors (the "Board") recommended that Somanetics shareholders tender their shares in the Tender Offer.  *See id.*  The Recommendation Statement described, among other things, the process leading up to the signing of the Merger Agreement and the basis for the Board's belief that the Merger was in the best interests of Somanetics' shareholders.  *Id.*  The Recommendation Statement also included Leerink's opinion and financial analyses upon which the Board relied to determine the fairness of the Merger.  *Id.*

On June 30, 2010, plaintiff Manne commenced the State Action in the Sixth Judicial Circuit Court of the State of Michigan against defendants Somanetics, Bruce J. Barrett, James I. Ausman, Daniel S. Follis, John P. Jumper, Richard R. Sorensen, USSC, Covidien, and Sub (collectively, the "Defendants") alleging that: (i) the Board breached

7

its fiduciary duties in connection with the Merger Agreement by agreeing to the Merger at an unfair price, via an unfair process, and by filing a Recommendation Statement that was materially false and misleading and lacking adequate disclosure of information; and (ii) USSC, Covidien, and Sub aided and abetted the breaches of fiduciary duty in connection with the Merger Agreement.  Hopkins Decl., ¶ 5.

On July 6, 2010, plaintiff Manne served Defendants with requests for the production of documents relating to the Merger, and on July 7, 2010, Manne filed a Motion For Expedited Discovery and Proceedings, which Defendants opposed.  Hopkins Decl., ¶ 6.  Prior to the hearing on Manne's Motion for Expedited Discovery and Proceedings, counsel in the State Action and counsel for Defendants negotiated for the review a limited production of documents concerning the Merger.  The parties could not reach an agreement.  *Id.*, ¶ 7.  On July 14, 2010, the court in the State Action conducted a hearing on plaintiff Manne's Motion for Expedited Discovery and Proceedings and denied the motion.  *Id.*, ¶ 8.

On July 15, 2010, Plaintiff Farrelly filed an action in this Court alleging violations of Sections 14(d)(4) and 14(e) of the Securities Exchange Act of 1934 (the "Exchange Act") against Somanetics and its Board, claims for breaches of fiduciary duty against the Board and claims for aiding and abetting the Board's breaches of fiduciary duty against Somanetics and Covidien.  Hopkins Decl., ¶ 9.

On July 15, 2010, plaintiff Manne filed an Emergency Motion For Immediate Hearing, For Temporary Restraining Order, Preliminary Injunction and Renewed Motion For Expedited Proceedings, which Defendants opposed and for which the State Court set a hearing date of July 21, 2010.  Hopkins Decl., ¶ 10.

On July 16, 2010, plaintiff Manne, through his counsel, sent a letter to Defendants' counsel demanding certain disclosures be made in the Recommendation Statement which he believed would benefit the stockholders in making an informed decision whether to tender their Somanetics shares in the Tender Offer.  Hopkins Decl., ¶ 11.

On July 18, 2010, Plaintiff Farrelly, through her counsel, sent Defendants a similar letter detailing the specific material information regarding the Merger that she believed must be disclosed to shareholders prior to their decision to tender their shares. Hopkins Decl., ¶ 12.   On July 19, 2010, Plaintiff Farrelly moved the Court for a Temporary Restraining Order to enjoin the Merger until Defendants made the disclosures as detailed in her letter to Defendants that Plaintiff Farrelly believed were material and necessary for shareholders to make an informed decision about whether to tender their shares of Somanetics common stock in the Tender Offer, and this Court set a hearing for July 22, 2010.  *Id.*, ¶ 13.

Between July 15, 2010 and July 20, 2010, Plaintiffs' counsel negotiated for the exchange of certain documents related to the Merger with the Defendants, and upon execution of a Confidentiality Agreement, Defendants produced certain key documents. Hopkins Decl., ¶ 14.   The documents included the board minutes of the Somanetics Board related to their review of the Merger, as well as documents concerning the financial analyses conducted by Leerink and relied upon by the Board in recommending the Merger.  *Id.*.

Plaintiffs' counsel, together with their financial and valuation expert, carefully reviewed the documents obtained from Defendants, with particular emphasis on the

information contained in the financial analyses conducted by Leerink.  Hopkins Decl., ¶ 15.  In light of the Tender Offer expiration date of July 27, 2010, just one week away, Plaintiffs' counsel and their experts thoroughly reviewed these documented on an expedited basis.  *Id.*  After reviewing the documents produced and in an effort to achieve the relief sought through Plaintiffs' motions for equitable relief, Plaintiffs' counsel concluded that the claims relating to the whether the price offered in the Merger was within the range of fairness faced a low likelihood of success.  *Id.*, ¶ 16.  Thus, Plaintiffs focused on ensuring that the Class had all material information necessary to make an informed decision on tendering their shares in the Tender Offer.  A review of such documents confirmed plaintiffs and their counsels' view that the Recommendation Statement's disclosures were still materially misleading and incomplete.  *Id.*

On July 20, 2010, informed by review of Defendants' documents and input from Plaintiff's financial expert,  Manne, through his counsel, sent Defendants another letter detailing specific information regarding the Merger that Manne believed was material and necessary to Somanetics' shareholders prior to their decision to tender their shares. Hopkins Decl., ¶ 17.  Also on July 20, 2010, after reviewing the documents produced by Defendants, and based on discussions with Defendants' counsel, Plaintiff Farrelly, through her counsel, withdrew her motion for a Temporary Restraining Order in exchange for Defendants agreeing to negotiate in good faith regarding certain supplemental disclosures by Somanetics.  *Id.*, ¶ 18.

Thereafter, counsel for the parties in the Actions engaged in arm's-length discussions and negotiations regarding a potential resolution of the Actions, and in connection with those discussions and negotiations, counsel for plaintiffs in the Actions

proposed to Defendants' counsel various additional disclosures to be filed with the SEC and disseminated to Somanetics' shareholders prior to the expiration of the Tender Offer on July 27, 2010.  Hopkins Decl., ¶ 19.

Through the night of July 20, 2010, and up until the moment before plaintiff Manne's argument on his Motion for Equitable Relief on July 21, 2010, counsel for the parties continued to engage in arms-length discussions and negotiations, including the demands for additional disclosure of material information.  Hopkins Decl., ¶ 20.  Only minutes before Manne's Motion for Equitable Relief was to be heard in the State Action, the parties reached an agreement in principle and accordingly, at the hearing on July 21, 2010, Manne's counsel informed the Court that he was withdrawing his Motion For Equitable Relief in consideration for Defendants' promises to issue the Supplemental Disclosures. *Id.*

Due to negotiations by Plaintiffs' counsel, on July 22, 2010, Somanetics provided additional information to shareholders in Amendment No. 4 to the Recommendation Statement filed with the SEC (the "Supplemental Disclosures"), which are described in more detail below, and are attached as Exhibit 3 to the Hopkins Declaration as well as Exhibit A to the Stipulation filed with the Court.

In connection with the Tender Offer and with the benefit of the Supplemental Disclosures, Somanetics stockholders tendered approximately 9,583,628 shares, or 80.2% of the outstanding shares of Somanetics stock.  Hopkins Decl., ¶ 22.  On July 28, 2010, after exercising its Top-Up Option to acquire the remaining shares needed to obtain the requisite 90% ownership of the Company to effect a short-form merger without a shareholder vote, Covidien consummated the Merger.  *Id.*, ¶ 23.

11

The parties' agreement is set forth in a Memorandum of Understanding dated April 27, 2011 (the "MOU"). Thereafter, the parties engaged in confirmatory discovery, which included reviewing the documents Defendants produced to plaintiffs in the Actions, reviewing those portions of the Board minutes addressing issues related to the Merger, and interviewing Adam Berger, a representative from Leerink most knowledgeable about the Merger, the process leading up to the Merger and Leerink's financial analyses. Hopkins Decl., ¶ 24.

Mr. Berger confirmed negotiations overseen by the Board, which was intimately involved in the process and vetted any potential conflicts with the financial advisors. Hopkins Decl., ¶ 25. Mr. Berger also discussed the detailed negotiations with Covidien and the reasons for agreeing to sell Somanetics. *Id.* In addition, Mr. Berger confirmed shareholders would not have received comparable value if other strategic alternatives were pursued, and that the management projections Leerink relied upon in its analysis were updated regularly. *Id.* Finally Mr. Berger confirmed the disclosures were the direct result of Plaintiffs' efforts in the Actions. *Id.* Thus, through the confirmatory discovery, Plaintiffs' counsel confirmed the fairness of the Merger and the Settlement. *Id.*

On June 17 and June 23, 2011, the parties executed the Stipulation, memorializing the terms of the settlement.

### B.    The Terms Of The Settlement

#### 1.    The Supplemental Disclosures

The Supplemental Disclosures filed with the SEC on July 22, 2010 addressed the deficiencies in the Recommendation Statement set forth in Plaintiffs Farrelly's and Manne's pleadings and subsequent demand letters, and provided Somanetics' shareholders with the material information necessary for them to make a fully informed

12

decision regarding whether to tender their shares prior to the expiration of the Tender Offer.

The Supplemental Disclosures, described in more detail below and in Amendment No. 4 to the Recommendation Statement (Hopkins Decl., Ex. 3), include the following: (i) information concerning the financial projections of Somanetics prepared by Somanetics management and provided to Leerink in connection with their fairness opinion; (ii) information concerning the key inputs used by Leerink in their various financial analyses concerning the Merger, including the *Selected Companies Analysis*, the *Selected Transactions Analysis*, and the *Illustrative Discounted Cash Flow* analysis; and (iii) additional information concerning the process leading up to the Merger conducted by the Company.

### a.      Financial Projections

Somanetics provided Leerink with the Company's financial projections for years 2010 through 2014 and included Base Case, Upside Case, and Downside Case scenarios. Leerink utilized the projections in determining that the Merger was fair to Somanetics shareholders from a financial point of view.

For example, in its *Illustrative Discounted Cash Flow* ("DCF") analysis, Leerink calculated a stand-alone value range for the Company utilizing each of the three sets of projections. *See* Recommendation Statement, pp. 29-30.  The DCF analysis involves projecting the future cash flow of a company over a certain period, calculating the terminal value of the company at the end of that period, and discounting those projected free cash flows and terminal value using a discount rate to arrive at the net present value of the company's stock.  However, the Recommendation Statement failed to disclose material line items in the projections utilized by Leerink, including the Company's

unlevered free cash flows, net operating losses, changes in working capital, and capital expenditure projections for the remainder of 2010 and through year 2014.

The Supplemental Disclosures included expanded detail regarding the projected financial performance of the Company, including earnings before interest and taxes ("EBIT"), changes in working capital, capital expenditures, unlevered free cash flow and net operating losses. Together, this information was important in evaluating Somanetics' financial prospects and the analyses conducted by Leerink, particularly Leerink's Illustrative DCF Analysis. The expanded financial projections also gave Somanetics' shareholders the ability to prepare their own analyses of Somanetics' value instead of relying on Leerink's analyses. Plaintiffs' counsel and their expert determined that disclosure of these projections were material and crucial to shareholders in order for them to assess whether the price being offered in the Merger was fair compensation for the benefits the stockholder would otherwise receive if the Company, which is undeniably in accelerated growth mode, were to continue operating as a standalone entity.

Consequently, Plaintiffs' counsel in the Actions demanded that Defendants disclose this information to shareholders. Defendants subsequently agreed to disclose the unlevered free cash flows, net operating losses, changes in working capital, and capital expenditure projections for the remainder of 2010 and through year 2014 under each set of projections. Accordingly, the following chart was included in the Supplemental Disclosures filed with the SEC:

| | 2010E | 2011E | 2012E | 2013E | 2014E |
|---|---|---|---|---|---|
| | (In millions) | (In millions) | (In millions) | (In millions) | (In millions) |
| **Base Case** | | | | | |
| Revenue | $ 56.9 | $ 67.6 | $ 81.3 | $ 99.2 | $    122.1 |
| Gross Profit | $ 49.5 | $ 59.1 | $ 71.1 | $ 86.9 | $    107.2 |

| | | | | | | |
|---|---|---|---|---|---|---|
| EBITDA | $ 12.2 | $ 15.4 | $ 21.5 | $ 29.0 | $ | 41.1 |
| EBIT | $ 10.9 | $ 13.9 | $ 19.8 | $ 27.1 | $ | 39.0 |
| Net Income | $ 7.4 | $ 9.4 | 13.2 | $ 17.9 | $ | 25.4 |
| Changes in Working Capital | $ (1.7) | $ (2.7) | $ (3.4) | $ (4.5) | $ | (5.7) |
| Capital Expenditure | $ (0.7) | $ (0.9) | $ (1.0) | $ (1.3) | $ | (1.6) |
| Unlevered Free Cash Flow | $ 5.2 | $ 6.1 | $ 8.9 | $ 12.3 | $ | 18.3 |
| Net Operating Losses | $ 7.6 | $ 0 | $ 0 | $ 0 | $ | 0 |
| **Upside Case** | | | | | | |
| Revenue | $ 57.4 | $ 68.9 | $ 86.7 | $113.5 | $ | 154.6 |
| Gross Profit | $ 49.9 | $ 60.2 | $ 75.6 | $ 99.0 | $ | 134.8 |
| EBITDA | $ 12.4 | $ 15.2 | $ 21.2 | $ 33.7 | $ | 56.9 |
| EBIT | $ 11.2 | $ 13.8 | $ 19.6 | $ 31.9 | $ | 54.9 |
| Net Income | $ 7.6 | $ 9.3 | $ 13.1 | $ 20.8 | $ | 35.2 |
| Changes in Working Capital | $ (1.8) | $ (2.9) | $ (4.4) | $ (6.7) | $ | (10.3) |
| Capital Expenditure | $ (0.7) | $ (0.9) | $ (1.0) | $ (1.3) | $ | (1.6) |
| Unlevered Free Cash Flow | $ 5.2 | $ 5.8 | $ 7.8 | $ 13.0 | $ | 23.5 |
| Net Operating Losses | $ 7.6 | $ 0 | $ 0 | $ 0 | $ | 0 |
| **Downside Case** | | | | | | |
| Revenue | $ 56.4 | $ 62.7 | $ 70.2 | $ 79.3 | $ | 89.0 |
| Gross Profit | $ 49.1 | $ 54.4 | $ 60.3 | $ 67.6 | $ | 75.1 |
| EBITDA | $ 11.6 | $ 9.2 | $ 12.2 | $ 13.4 | $ | 14.4 |
| EBIT | $ 10.4 | $ 7.7 | $ 10.5 | $ 11.6 | $ | 12.3 |
| Net Income | $ 7.1 | $ 5.6 | $ 7.4 | $ 8.2 | $ | 8.8 |
| Changes in Working Capital | $ (1.6) | $ (1.6) | $ (1.9) | $ (2.3) | $ | (2.4) |
| Capital Expenditure | $ (0.7) | $ (0.9) | $ (1.0) | $ (1.3) | $ | (1.6) |
| Unlevered Free Cash Flow | $ 5.0 | $ 3.4 | $ 4.7 | $ 4.9 | $ | 5.0 |
| Net Operating Losses | $ 7.6 | $ 0 | $ 0 | $ 0 | $ | 0 |

*See* Supplemental Disclosures, Exhibit 3 to the Hopkins Declaration at 3. As a result of this disclosure, stockholders were able to determine, prior to tendering their shares,

whether the Company was better off continuing on its own or should be sold to a third party.

> **b.    Information Concerning The Key Inputs and Multiples Used by Leerink In Their Various Financial Analyses Concerning the Merger**

*Illustrative Discounted Cash Flow Analysis*

As described above, a DCF analysis involves projecting the future cash flow of a company over a certain period, calculating the terminal value of the company at the end of that period, and discounting the projected free cash flow and terminal value using a discount rate to arrive at the net present value of the total expected cash flow of the company.

The DCF analysis is a valuation methodology most widely used by valuation and investment banking professionals.  The primary benefit of a DCF analysis is that it constitutes a direct valuation approach that incorporates specific information about the subject company's unique financial prospects, and thus provides a more sophisticated and reliable picture of a company's value than other valuation approaches, such as looking at multiples of other companies.

Leerink conducted a DCF analysis in which it calculated the future free cash flow projections of the Company from years 2010 to 2014, calculated the terminal value of the Company at the end of year 2014 by applying a multiple range, and then discounted the future free cash flow and terminal value of the Company in order to arrive at a present value of Somanetics' common stock.  *See* Hopkins Decl, Ex. 2, Recommendation Statement at pp. 29-30.  In conducting its analysis, the Recommendation Statement disclosed that Leerink used a discount rate of 10.8% to 14.8%, which was chosen based on Leerink's estimate of the Company's weighted average cost of capital ("WACC").

The choice of the discount rate is one of the primary assumptions made by a banker in conducting a DCF analysis. A one or two percentage point difference in the discount rate can make a big difference in the company's value. That is, the higher the discount rate selected, the lower the valuation of the company being valued.

The Recommendation Statement was silent about the key inputs used by Leerink to calculate the Company's WACC. Similarly, the Recommendation Statement discloses that Leerink used a multiple range of 10.0x to 14.0x to calculate the Company's terminal value, but failed to disclose the criteria used to select the multiple range. Like the selection of the discount rate, the valuation of the Company resulting from the DCF analysis will significantly change as the terminal value multiples selected changes. Accordingly, it was important for Somanetics shareholders to be provided with the manner in which the discount rate and terminal multiple ranges were selected. As a result, Plaintiffs and their counsel in the Actions obtained from the Defendants the following additional disclosures:

> In determining the range of multiples to use to estimate implied terminal values for the Company in year 2014, Leerink reviewed the range of EV/EBITDA multiples for the High Growth Companies for 2010E (8.3x to 19.0x, with a median of 13.6x) and the range of EV/EBITDA multiples for the Low Growth Companies for 2010E (6.4x to 18.3x, with a median of 8.2x), as described in the Selected Companies Analysis, bearing in mind that these multiples applied to estimated future results rather than trailing results. Based on these ranges and medians, Leerink's judgment that the Company is between a high growth and a low growth med tech company, and its judgment of an appropriate adjustment to reflect trailing results, Leerink selected the range of terminal multiples of 10.0x to 14.0x to apply to estimated 2014 EBITDA of the Company in estimating the range of terminal values for the Company in year 2014.

> Leerink used the following inputs to estimate the Company's weighted average cost of capital that was the basis for the range of discount rates used in the *Illustrative Discounted Cash Flow Analysis*:

**Cost of Equity**

| | |
|---|---|
| Risk Free Rate (30 Year US Treasury) | 4.13% |
| Asset Beta | 0.86 |
| SMTS Debt / Capitalization | 0% |
| Marginal Tax Rate | 38% |
| Equity Beta | 0.86 |
| Equity Market Risk Premium | 6.70% |
| Beta Adjusted EMRP | 5.78% |
| Small Cap Risk Premium | 2.85% |
| Cost of Equity | 12.76% |

**Cost of Debt**

| | |
|---|---|
| Risk Free Rate (10 Year US Treasury) | 3.18% |
| Credit Spread | 4.20% |
| Pretax Cost of Debt | 7.38% |
| Marginal Tax Rate | 38% |
| After tax Cost of Debt | 4.58% |
| Debt / Capitalization | 0% |
| **Weighted Average Cost of Capital** | **12.8%** |

*See* Hopkins Decl, Ex. 3, Recommendation Statement at 7-8. The disclosure in the Recommendation Statement of the key inputs used to perform the DCF analysis, along with the additional disclosure of the projections described above, allowed Somanetics' shareholders to independently evaluate the credibility of Leerink's analysis.

*Selected Companies Analysis*

A *Selected Companies Analysis* consists of valuing a company based on the market valuation of similar companies. The analysis involves identifying a list of companies comparable to the target company, in this case Somanetics, and comparing and/or applying the valuation multiples observed from the comparable companies to

18

those of the target company to establish a relative valuation.   In particular, Leerink observed enterprise value/revenue ("EV/R"), enterprise value/EBITDA ("EV/EBIDTA"), and price/earnings ("P/E") multiples for years 2010 through 2012 for 24 companies it deemed comparable to Somanetics. Leerink then selected a range from the observed multiples which it applied to Somanetics' corresponding financial data in order to calculate an implied valuation range for Somanetics.  *See* Supplemental Disclosures, Exhibit 3 to the Hopkins Declaration at 25-26.

The Recommendation Statement, however, failed to disclose the specific criteria used by Leerink to select these companies used in the analysis. Understanding the specific selection criteria is critical to determining whether the valuation of Somanetics in the analysis resulted from a comparison with truly similar companies.  In addition, the Recommendation Statement failed to disclose the valuation multiples observed for each of the comparable companies that were observed by Leerink, which was important in determining whether Leerink selected an adequate multiple range to calculate Somanetics' valuation range.  Accordingly, Plaintiffs' counsel pressed Defendants for the criteria used to select the companies used in the analysis, as well as the EV/R, EV/EBITDA, and P/E multiples observed for each company for years 2010 through 2012, and the Defendants ultimately agreed to disclose such information. *See* Supplemental Disclosures, Exhibit 3 to the Hopkins Decl., pp. 4-5.  Based thereon, Somanetics shareholders were able to better assess the key inputs and multiples that were used in calculating the implied valuation range for Somanetics resulting from this analysis.

19

*Selected Transactions Analysis*

As the comparable companies analysis looks to other comparable companies to draw conclusions about a target company's value, a precedent transactions analysis is based on the premise that the value of a company can be estimated by analyzing the multiples observed in transactions deemed similar to the proposed transaction. The analysis involves identifying a list of transactions comparable to the transaction being analyzed, and applying valuation multiples observed from the comparable transactions to those of the target company, in this case Somanetics, to establish a relative valuation.

In its *Selected Transactions Analysis*, Leerink observed six valuation multiples for each of the target companies in the comparable transactions: the Transaction Value/LTM Revenue, Transaction Value/NTM Revenue, Transaction Value/LTM EBITDA, Transaction Value/NTM EBITDA, LTM P/E, and NTM P/E multiples. *See* Recommendation Statement, Exhibit 2 to the Hopkins Decl., pp. 27-29. Leerink then selected a range of multiples observed from the comparable transactions and applied such range to Somanetics' financial data in order to calculate an implied valuation range for Somanetics. The Recommendation Statement, however, failed to disclose the multiples observed for each of the comparable transactions. Disclosure of this information was material because the valuation range of Somanetics resulting from this analysis significantly changes as the range of the multiples applied varies – a lower set of multiples applied to Somanetics yields a lower valuation range of the Company, and vice versa. Accordingly, by disclosing the multiples observed for each transaction, a shareholder can properly assess whether Leerink chose an adequate multiple range to apply to Somanetics. As a result of the efforts of Plaintiffs and their counsel, Defendants

agreed to disclose the multiples observed for each transaction. *See* Supplemental Disclosures, Exhibit 3 to the Hopkins Declaration at 5-6. Somanetics stockholders could now independently assess whether an appropriate range of multiples was applied to Somanetics' financial data, and had the necessary backdrop to evaluate the implied valuation range of Somanetics resulting from this analysis in determining whether to tender their shares in the Tender Offer.

### c.    Information Regarding the Sales Process Conducted by the Somanetics Board and Leerink

The Recommendation Statement did not disclose important information about the sales process conducted by Somanetics. In particular, the Recommendation Statement failed to describe how Leerink determined which parties to contact, as well as how Leerink determined that it had contacted the universe of potential acquirers that were interested in acquiring the Company. Such information is vital for shareholders to determine whether the Company was properly shopped, whether the sales process was carried in such manner as to fully maximize shareholder value, and whether there were still potential acquirers that were not contacted. The additional disclosures negotiated by Plaintiffs remedied such deficiencies.

As a direct result of Plaintiffs Farrelly's and Manne's demands, Defendants disclosed: (i) the number of companies that met the criteria of being potential buyers; (ii) the reasons Leerink contacted only three companies in the process to determine whether there was any serious interest other than from Covidien; and (iii) the reasons the Board believed other parties would not offer a higher price for the Company and, thus, why the Board did not attempt to contact such parties as part of a "market check." *See* Supplemental Disclosures, Exhibit 3 to the Hopkins Decl., at 2-3.

21

**C.     The Class Notice**

The Court preliminarily approved the Settlement on July 8, 2011, approved the form of Notice and set a schedule and Fairness Hearing.  Pursuant to the Scheduling Order, Gilardi obtained lists of the names and addresses of all record beneficial holders of Somanetics common stock during the relevant period containing approximately 497 names.  Sylvester Aff., ¶¶ 3-4.  Gilardi then caused to be sent 497 notices to be sent via first class mail.  *Id.*, ¶ 4.  Gilardo also caused to be sent 233 notices to brokerages, custodial banks and other institutions.  *Id.*, ¶ 6.  In total, Gilardi sent 5,962 notices to potential Settlement Class members.  Sylvester Aff., ¶ 9.

To Plaintiffs and their counsels' knowledge, not one single former Somanetics shareholder has objected to any aspect of the proposed Settlement.

**D.     Attorneys' Fees**

After the parties negotiated these additional disclosures, counsel for each side engaged in good faith negotiations in an effort to agree upon the amount of attorneys' fees and expenses that Defendants would pay to counsel for Plaintiffs in the Actions for the substantial benefit they conferred on the Settlement Class.  As a result of these negotiations, Plaintiffs' counsel have agreed to make an application for attorneys' fees and expenses in an amount not to exceed $315,000.00, and Defendants have agreed not to oppose this request.

Plaintiffs' counsel have collectively spent over 1,000 hours and $24,000 in expenses to litigate the Actions which were reasonably incurred.  *See* Charts of Time and Expenses of Plaintiffs' counsel, attached s Exhibits 4-9 to the Hopkins Decl.  Plaintiffs' counsels' fee request is approximately $ 232,267 less than their total lodestar and

22

expenses, or a negative multiplier of 1.57, further demonstrating the reasonableness of their request.

Notably, this time does not include the hours and expense spent negotiating the MOU, the Stipulation, briefing and filing of these papers as well as the Preliminary Approval Motion.  The negotiated amount of attorneys' fees reflects the parties' experience as to what is an appropriate fee under the circumstances considering the result achieved for the benefit of the Class and fees awarded in similar cases.

## III.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

### A.     The Relevant Standards

The standard for reviewing a proposed settlement of a class action is whether the proposed settlement is "fair, adequate and reasonable," and has been entered into without collusion between the parties.  *Williams v. Vukovich,* 720 F.2d 909, 921 (6th Cir. 1983); *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier,* 262 F.3d 559, 565-66 (6th Cir. 2001). In applying this standard, the Court must weigh, in light of the claims and defenses asserted by the parties, the "plaintiff's likelihood of success on the merits against the amount and form of relief in the settlement."  *Williams,* 720 F.2d at 922 (*citing Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n.14 (1981)).  The adequacy of a class action settlement is determined after the "risks, expense, and delay of further litigation have been assessed."  *Id.*

To assist the district court in reaching the determination that a settlement is fair, adequate and reasonable, the Sixth Circuit has established several factors to be considered:  (1) the potential relief that plaintiffs may realize following a full trial on the merits balanced against the relief offered by the settlement; (2) the complexity, expense

23

and likely duration of the litigation; (3) the status of the proceedings and the amount of

discovery completed; (4) the judgment of experienced trial counsel; (5) the nature of the

negotiations; (6) that the interests of counsel and the named plaintiffs are not

unjustifiably advanced at the expense of unnamed class members; (7) the objections of

the class members; and (8) the public interest. *See Williams,* 720 F.2d at 922; *In re*

*Cardizem CD Antitrust Litig.,* 218 F.R.D. 508, 522 (E.D. Mich. 2003) (the "Williams

Factors").

      Evaluating the above-mentioned factors considered by courts in granting final

approval of class action settlements demonstrates that the Settlement warrants final

approval.

      **B.**    **The Proposed Settlement Satisfies The "Williams" Factors**

          **1.**    **The Guaranteed Relief Provided In The Settlement Far**
                    **Outweighs The Possible Relief That Might Be Obtained After**
                    **Trial**

      In weighing the benefits obtained by the agreement of settlement against the

benefits that could be obtained by proceeding with the litigation, "[t]he trial court should

not make a proponent of a proposed settlement 'justify each term of settlement against a

hypothetical or speculative measure of what concessions might have been gained;

inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.'"

*Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir. 1977) (citation omitted); *see also*

*Williams,* 720 F.2d at 922-23. "Rather the judge is restricted to determining whether the

terms proposed are fair and reasonable." FED PRAC. & PROC. § 1797.5; *Granada*

*Invest., Inc. v. DWG Corp.,* 823 F. Supp. 448, 453 (N.D. Ohio 1993) (in determining

whether to approve a settlement, the trial judge "should not decide the merits of the

action or attempt to substitute its own judgment for that of the parties.") (citation omitted).

In the Actions, there were numerous factual and legal obstacles to Plaintiffs prevailing on the merits at trial in their respective Actions. Complex legal and factual issues were hotly contested by an extremely talented and resourceful defense team, which increased the possibility of no recovery for Plaintiffs and other Somanetics shareholders.

For example, to demonstrate that a board omitted material information is a daunting task, requiring the litigant to dig through documents to discern what material facts the board knew or should have known and did not disclose to the public. *See, e.g.,* Donald E. Pease, *Delaware's Disclosure Rule: The "Complete Candor" Standard, Its Application, and Why Sue in Delaware*, 14 Del. J. Corp. L. 445, 486-87 (1989). Defendants would most certainly attempt to defeat these contentions by claiming their disclosures were adequate. They would also undoubtedly invoke the business judgment rule and the favorable protection it provides to corporate executives. Overcoming the business judgment rule in this context can often present a tremendous obstacle for Plaintiffs.

As for Plaintiffs' process claim, Defendants would certainly have pointed to the fact that the Company, through Leerink, its financial advisor, conducted an adequate market check in which it identified the universe of potential acquirers and contacted such parties to gauge their interest in a transaction. Defendants would have argued that none of these potential acquirers even presented an offer.

As to the fairness of the $25.00 per share consideration offered in the Merger, the Defendants would have pointed out that the Company retained independent financial and

25

legal advisors, diligently pursued discussions and negotiations, successfully negotiated a larger premium relative to Somanetics' share price, and ultimately approved the Merger Agreement on an informed basis after careful deliberation.   Indeed, the Merger represented a premium of 33.9% over the closing price per share of Somanetics common stock on June 11, 2010, three trading days before the execution date of the Merger Agreement.

Accordingly, in light of the numerous legal and factual obstacles facing plaintiffs in the Actions, this factor supports approval of the Settlement.

### 2.       The Complexity, Expense and Likely Duration of the Litigation

Another factor which courts consider in finally approving a proposed settlement is the complexity, expense and likely duration of the litigation.   Direct shareholder actions in the context of mergers and acquisitions litigation is a complex and niche practice in the arena of corporate litigation.   An even smaller subset of merger litigation are those actions that challenge so-called "friendly mergers" into third parties, as opposed to actions that challenge management-led buyouts or controlling shareholders taking corporations private.   *See* Robert B. Thompson & Randall S. Thomas, *The New Look of Shareholder Litigation: Acquisition Oriented Class Actions*, 57 Vand. L. Rev. 133, 17378 (2004).   Prevailing in such litigation is difficult because a board of directors approving a friendly merger deal is usually shielded by the business judgment rule unless it is shown that the board violated one of its triad duties of loyalty, care or candor.

Had the Settlement not been reached, continued litigation would have been both lengthy and expensive.   This litigation involved difficult issues concerning the duties of directors and others to shareholders of a corporation in the sale-of-control context.   Like

26

virtually all complex cases, this litigation (absent settlement) could have continued for several years through trial and appeal, involving great expense.  Thus, this factor strongly supports approval of the Settlement.

**3.      The Status of the Proceedings and the Amount of Discovery Completed**

The stage of proceedings and the amount of discovery completed at the time of settlement are relevant to the parties' knowledge of the strengths and weaknesses of the various claims in the case, and consequently affect the determination of the settlement's fairness.  *New England Health Care Emples. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 631-632 (W.D. Ky. 2006); *see also Williams,* 720 F.2d at 922-23.  Here, Plaintiffs' counsel in the Actions conducted an extensive investigation with respect to the complex legal and factual issues relevant to this action and, with the assistance of a financial and valuation advisor, thoroughly analyzed these issues, including a thorough review of all SEC filings regarding the transaction, Somanetics, and Covidien.  Plaintiffs' counsel obtained significant discovery and unearthed the disclosure deficiencies in the Recommendation Statement that have now been resolved by the Settlement.  Plaintiffs obtained confidential company documents, including minutes from Board meetings and presentations and analysis from the Company's financial advisor, and most notably Leerink's fairness opinion.  In addition, Plaintiffs' counsel interviewed Adam Berger, a representative from Leerink most knowledgeable about the Merger.  Thus, sufficient discovery has been conducted to allow counsel to evaluate the relative merits of each side's case and to confirm that the Settlement is in the best interests of the class.

4.      **Judgment of Experienced Trial Counsel and the Lack of Objections from Settlement Class Members**

In approving a proposed settlement, courts also consider the opinion of experienced counsel as to the merits of the settlement, and "should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs." *In re Cardizem CD Antitrust Litig.,* 218 F.R.D. at 525; *accord, Manual for Complex Litigation* § 30.42 at 240 (3rd ed. 1995). Plaintiffs' counsel has extensive experience and success in shareholder class actions, and believes that the Settlement provides to the Settlement Class relief that is fair, reasonable and adequate.

In addition, the "overwhelming positive Class response to the Proposed Settlement" constitutes the reaction of the Settlement Class, as a whole, and "weighs heavily in favor of approval." *Cardizem,* 218 F.R.D at 530 (citing *Kogan v. AIMCO Fox Chase*, 193 F.R.D. 496, 502 (E.D. Mich. 2000)). Notice describing the settlement was sent by the Company pursuant to the Court's preliminary approval order dated July 8, 2011. Pursuant to the Scheduling Order, notice was disseminated to approximately 5,962 potential class members who were holders of Somanetics common stock during the Settlement Class Period.[12] The date by which to file an objection to the settlement expired on September 17, 2011 and, to Plaintiffs' counsel's knowledge, no objections have been filed. The lack of a single objection indicates overwhelming support for the Settlement, and strongly favors its approval.

---

[12] *See* Sylvester Aff., ¶ 9.

28

     **5.**     **The Nature of the Negotiations and the Interests of Counsel and the Named Plaintiff**

Courts presume good faith in settlement negotiations. *Granada Investments, Inc. v. DWG Corp.* 962 F.2d 1203, 1205 (6th Cir. 1992) ("Absent evidence of fraud or collusion, such settlements are not to be trifled with"); *Hemphill v. San Diego Ass'n of Realtors, Inc.,* 225 F.R.D. 616, 621 (S.D. Cal. 2004). Courts recognize that the best indicator of good faith negotiations is the fairness of the terms of the settlement itself. *Bowling v. Pfizer. Inc.,* 143 F.R.D. 141, 152 (S.D. Ohio 1992) (citation omitted).

In this case and the State Action, both the litigation and the negotiations surrounding the Settlement were hotly contested. The Settlement was produced by arm's-length bargaining in a context where there were numerous disputed issues of fact and law along with two similar Actions being litigated in different venues. The negotiations were both intensive and hard-fought. Once an agreement-in-principle was reached, the Stipulation itself went through several revisions until final agreement was attained. Accordingly, the Settlement was the product of arm's length negotiations between the parties to settle both Actions.

In addition, the interests of counsel and the named plaintiffs are not unjustifiably advanced at the expense of unnamed class members. For example, Plaintiffs' counsel put the interests of the Settlement Class members above their own. Plaintiffs' counsel did not negotiate an attorney fee until after they secured the supplemental disclosures, which provided a substantial, material benefit to the Settlement Class. Further, with the settlement and fee subject to Court approval, Plaintiffs' counsel bear the risk that the negotiated amount of attorneys' fees may not even be secured.

6.      **The Public Interest**

The Sixth Circuit has consistently held that public "policy favor[s] the settlement of disputes and the avoidance of costly and time-consuming litigation." *Henley v. Cuyahoga County Bd. of Mental Retardation & Dev. Disabilities,* 141 Fed. Appx. 437, 442 (6th Cir. 2000); *Aro Corp. v. Allied Witan Co.,* 531 F.2d 1368, 1372 (6th Cir. 1976); *New England Health Care Emples. Pension Fund v. Fruit of the Loom, Inc.,* 234 F.R.D. 627, 631 (W.D. Ky. 2006). Further, there is a strong public policy in favor of settlement of complex class action litigation. *Cardizem,* 218 F.R.D. at 230.

In sum, this Settlement meets all of the factors weighed by courts in determining whether a settlement is fair, reasonable, and adequate, and should thus be approved.

## IV.     THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS FOR THE PURPOSES OF SETTLEMENT

Plaintiff seeks class certification for settlement purposes. The parties have agreed to the certification of a non opt-out Settlement Class defined as follows:

> any and all record and beneficial holders of Somanetics common stock, their respective successors in interest, successors, predecessors in interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them, together with their predecessors and successors and assigns, who held Somanetics common stock at any time between and including June 16, 2010, and the date of consummation of the Merger, but excluding Defendants and their respective affiliates.

Under Fed. R. Civ. P. 23 ("Rule 23"), the Court must engage in a two-step analysis to determine whether to certify this as a class action for settlement purposes. First, the Court must determine whether Plaintiff has satisfied the prerequisites for maintaining a class action under Rule 23(a). Then, under Rule 23(b), the Court must determine whether there are additional elements that would justify the class certification.

30

Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems. *See Cardizem,* 218 F.R.D. at 517. As discussed below, each of Rule 23's criteria are satisfied.

### A.      The Settlement Class Is So Numerous That Joinder Of All Settlement Class Members Is Impracticable

Federal Rule of Civil Procedure 23(a)(1) is satisfied if "the class is so numerous that joinder of all members is impracticable." The proposed Settlement Class satisfies the numerosity requirements of Rule 23(a)(1) because this case involved nationally traded securities. *In Picard Chem. Profit Sharing Plan v. Perrigo Co.*, Nos. 95-CV-141, 95-CV-290, 1996 U.S. Dist. LEXIS 16330, at *16 (W.D. Mich. Sept. 27, 1996) (numerosity "is generally assumed to have been met in class action suits involving nationally traded securities"). Moreover, Somanetics had over 11.9 million shares of common stock outstanding at the time of the Merger. There were undoubtedly hundreds, if not thousands, of holders of Somanetics shares at the time of the Merger. It is therefore clear that the Settlement Class is so numerous as to make individual joinder impracticable, if not logistically impossible, especially where members of the Settlement Class are located throughout the country. That clearly satisfies the numerosity requirement of Rule 23(a)(1).

### B.      Common Questions of Law and Fact are Common to the Class

The common questions requirement is met if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Only a single legal or factual issue common to the class is required. *See In re American Med. Sys.,* 75 F.3d 1069, 1080 (6th Cir. 1996) (commonality may be satisfied by only one common issue).

31

The Actions will require the Court to address a series of identical questions with respect to the Settlement Class that will affect all Settlement Class members. For example, as alleged in the complaints filed in both Actions, common questions of law and fact exist with regard to the Settlement Class's claims as to whether Defendants breached their fiduciary duties to the Settlement Class members or aided and abetted such breaches. Central fact issues and their legal consequences are common to all Settlement Class members. Thus, the Settlement Class satisfies the commonality requirement of Rule 23(a)(2).

### C.   Plaintiff's Claims are Typical of those of the Settlement Class

Rule 23(a)(3) is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The claim of a party is typical if it arises from the same event or course of conduct which gives rise to the claims of other class members and is based on the same legal theory:

The requirement has been described as "the representative's interests [being] aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *In Re Med. Sys. Inc.,* 75 F.3d at 1082. Briefly, "as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. Gen. Motors Corp.,* 133 F.3d 388, 399 (6th Cir. 1998).

In this case, Plaintiff's claims are the same as all other Settlement Class members. Plaintiff alleged that she, like every other Settlement Class member, would be irreparably harmed by consummation of the transaction without adequate disclosure of material information. Plaintiff has diligently and skillfully advanced the interests of the other

Settlement Class members and there is no conflict between Plaintiff and the Settlement Class.

### D.   Adequate Representation and Appointment of Class Counsel

Rule 23(a)(4) requires adequate representation: "1) [t]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representative will vigorously prosecute the interests of the class through qualified counsel." *Senter v. Gen. Motors Corp.,* 532 F.2d 511, 524-25 (6th Cir. 1976).

Plaintiff and her counsel in this case satisfy the requirements in Rule 23(a)(4) for adequate representation of the class. As described above, Plaintiff's interests are coextensive with those of the class. Moreover, Plaintiff's counsel are well qualified to adequately represent the class and should be appointed as class counsel.

Plaintiff is represented by Levi & Korsinsky LLP, a nationally recognized firm in takeover litigation, with extensive experience litigating these types of cases in state and federal courts across the country. Plaintiff Manne is represented by Faruqi & Faruqi, LLP and Holzer Holzer & Fistel LLC, also well-established, experienced firms in takeover litigation. Each firm's qualifications and experience are described in their firm resumes. *See* Hopkins Decl., Exhibits 10-12.

### E.   The Settlement Class Should be Certified Under Rule 23(b)(1) or 23(b)(2)

Although class certification is appropriate if only one of the provisions of Rule 23(b) is met, the proposed Settlement Class satisfies both Rule 23(b)(1) and (b)(2), making preliminary certification of the proposed Settlement Class appropriate in the present case. Rule 23(b)(1) is met in cases where, like here, "the prosecution of separate actions could lead to inconsistent adjudications." *Cates v. Cooper Tire & Rubber Co.,*

33

253 F.R.D. 422, 431 (N.D. Ohio 2008).  Absent class certification, the various Actions filed against the Defendants could result in inconsistent judgments regarding, *e.g.*, whether Defendants breached their fiduciary duties to the holders of Somanetics common stock in connection with the Merger.

Rule 23(b)(2) also authorizes a mandatory class action "if the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Here, Defendants' alleged misconduct affected the proposed Settlement Class in a way that is generally applicable to the entire Settlement Class, and Plaintiff sought injunctive relief with respect to the Merger.  Moreover, the benefits of the Settlement apply to the entirety of the Settlement Class.  Thus, preliminary certification under Rule 23(b)(1) and (b)(2) is appropriate.

Further, certification of a Settlement Class without opt-out rights for injunctive relief claims is appropriate in this case, which seeks predominantly equitable relief.  *See, e.g., Reeb v. Ohio Dept. of Rehabilitation and Correction*, 435 F.3d 639, 647 (6th Cir. 2006); *Cox v. American Synthetic Rubber Co.*, 2008 WL 5381909, at *5 (W.D. Ky., 2008).  In addition, decisions from the Delaware Court of Chancery, where a significant amount of these merger-related cases are brought and litigated, are in accord, and opt-out rights are virtually never given.  *See, e.g., Turner v. Bernstein*, 768 A.2d 24, 31 (Del. Ch. 2000); *In re Wm. Wrigley Jr. Co. Shareholders Litigation,* No. 3750-VCL, 2009 WL 154380 (Del. Ch. Jan. 22, 2009).

For these reasons, the four requirements of Rule 23(a) and the provisions of Rule 23(b) are satisfied, and Plaintiff should be certified as representative for the class and her

counsel should be appointed class counsel.

## V.   THE REQUEST FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES IS FAIR AND REASONABLE AND SHOULD BE APPROVED BY THE COURT

Plaintiffs' counsel are applying for an award of $315,000 in attorneys' fees, inclusive of expenses incurred in the prosecution of the Actions on a fully contingent basis.  Somanetics has agreed to pay such amounts as the Court awards, up to $315,000 in the aggregate.  Plaintiff's' counsel respectfully submits that their request is fair and reasonable in light of the substantial benefits achieved, awards in other similar cases and other relevant factors.  As with the settlement, no Class member has objected to the fee application.

Pursuant to the Stipulation, this fee will be paid entirely by Defendants and will not diminish or impair the relief available to Settlement Class members in any way. Further, the amount of their fees was not negotiated until all of the other aspects of the Settlement had been agreed upon.  Thus, the payment of attorneys' fee has no impact on the benefits available to the Settlement Class, and conversely, any reduction in the fee amount will not inure to the benefit of the Settlement Class.

Where the efforts of a plaintiff and his or her counsel have conferred a substantial benefit upon other shareholders, courts have long recognized an exception to the American Rule requiring the parties to pay their own attorneys' fees, known as the "substantial benefit" doctrine.  *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 396-97 (1970).  *See also Smillie v. Park Chemical Co.*, 710 F2d 271, 275 (6th Cir. 1983) (citations omitted); *Paragon Molding, LTD v. Safeco Ins. Co.*, No. 3:05cv422, at *16

(S.D. Ohio Sept. 22, 2010).  Under this doctrine, courts permit a party who conferred a benefit for others to recover his attorneys' fees and costs.  *Id.*

The agreed-upon fee in this case is reasonable and fair and should be approved. In determining whether the requested fee is reasonable, courts in the Sixth Circuit look to the following factors:  (1) the value of the benefit conferred to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) the complexity of the litigation; (5) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; and (6) the professional skill and standing of counsel involved on both sides.  *Bowling v. Pfizer, Inc.,* 102 F.3d 777, 780 (6th Cir. 1996) (the "Bowling Factors"); *Smillie,* 710 F.2d at 275.

Plaintiff submits that all of the above factors warrant a finding that the negotiated attorneys' fee is fair and reasonable.

### A.    Plaintiff And Her Counsel Conferred A Substantial Benefit To The Class By Ensuring That They Had All Material Information Concerning The Merger

 "One of the primary determinants of the quality of work performed is the result obtained [by counsel]."  *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 517 (6th Cir. 1993); *Hensley v. Eckerhart,* 461 U.S. 424, 434-36 (1983) (noting that the most critical factor in determining a reasonable fee is the result achieved by counsel)).  While Plaintiffs believed their claims were meritorious when filed, through investigation, a thorough examination of the law, discovery, and consultation with their valuation experts, Plaintiffs and their counsel have concluded that the benefits secured by the Supplemental Disclosures outweighed the risk, delay, and cost of further litigation and possible appeals.

However, through the Supplemental Disclosures obtained by virtue of the prosecution of the Actions, Plaintiffs were able to assure meaningful and timely relief.

Plaintiffs' counsel have achieved a substantial benefit for the putative class by obtaining the material Supplemental Disclosures concerning the process leading up to the signing of the Merger Agreement and the financial analyses supporting Leerink's fairness option.   A "heightened level of corporate disclosure" in and of itself is sufficient to "justify an award of counsel fees."  *Tandycrafts, Inc. v. Initio Partners,* 562 A.2d 1162, 1165 (Del. 1989) (where plaintiff's counsel creates a benefit to stockholders such as additional disclosures they are entitled to an attorney's fee from those shareholders under the common benefit doctrine).[13]   Moreover, it is well-settled that curative disclosures, such as here, confer a compensable benefit on the class such that Plaintiffs' counsel can successfully make a claim for fees and expenses.  *See, e.g.*, *In re FLS Holdings, Inc. S'holders Litig*., 1993 WL 104562, at *5 (Del. Ch. Apr. 21, 1993) ("[i]mproved disclosures may certainly prove beneficial to class members and may constitute consideration of a type which will support a settlement of claims").  The value of timely, meaningful disclosure cannot be overstated:

> Indeed, the timely disclosure of the information in the supplement was presumably of greater value to the class than any potential award of damages based on the failure to disclose the same information, as such information is of the greatest utility when it is available in a timely manner to inform the stockholders' decision making process.  Considering all the circumstances presented, I have no difficulty concluding that the disclosures made here constitute adequate consideration for the settlement of the claims asserted and adequately support the fee requested.

---

[13]      In the absence of relevant legal precedent, Michigan courts look to Delaware law, where a substantial number of entities are incorporated and, thus, issues of corporate law are frequently litigated, as relevant legal authority.  *See, e.g., Berkower v. Applebaum*, No. 232207, 2003 WL 1904347, at *2 (Mich. App. Apr. 17, 2003) (finding Delaware authority "persuasive").

*In re Talley Indus., Inc. S'holders Litig.*, No. Civ. A. 15961, 1998 WL 191939, at *15 (Del. Ch. Apr. 13, 1998).   Moreover, courts have held that the preferred remedy is disclosure before the transaction is completed.   *See, e.g.*, *In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 728 (Del. Ch. 1999) (citing *Gimbel v. Signal Cos.*, 316 A.2d 599, 603 (Del. Ch.), *aff'd*, 316 A.2d 619 (Del. 1974) (rescission of complex corporate transactions is strongly disfavored by the Court because it requires the imprecise, inherent difficulties of trying to "unscramble the eggs.")); *see also Gilmartin v. Adobe Res. Corp.*, No. Civ. A. 12467, 1992 WL 71510, at *13 (Del. Ch. Apr. 6, 1992); *Staples*, 792 A.2d at 960.

        As discussed above, the Supplemental Disclosures provided to Somanetics stockholders material information concerning the Merger in advance of the Tender Offer, and included additional detail concerning:   (1) financial projections prepared by management; (2) key inputs and multiples used in preparing the various financial analyses conducted by Leerink, including the *Discounted Cash Flow Analysis*, the *Selected Companies* Analysis, and the *Selected Transactions* Analysis; and (3) information relating to the process the Company employed in connection with the sale of Somanetics.   Indeed, the axiom that better information leads to better decisions is no more applicable than in the context of mergers and acquisitions.   This is further supported by Plaintiff Manne's financial expert that although no monetary value can be given to disclosures, they were nevertheless significant to Somanetics' shareholders in their evaluation of the Tender Offer and enabled them to make a more informed decision on tendering their shares.   *See* Morris Affidavit, at ¶ 6, attached to the Hopkins Declaration as Exhibit 2.

In response to the demands made by Plaintiffs in the Actions, Defendants agreed to disclose the free cash flow projections provided by management to Leerink for the years 2010 through 2014 for each of the three sets of projections relied upon by Leerink (Base Case, Upside Case and Downside Case) in rendering its fairness opinion. Projected free cash flows, which form the basis for Leerink's *Discounted Cash Flow Analysis*, were material to a Somanetics stockholder's determination of whether the price being offered was fair compensation for the benefits the stockholder would otherwise receive if the Company, which is undeniably in accelerated growth mode, were to continue operating as a standalone entity. As a result of this disclosure, stockholders could determine, prior to tendering their shares, whether the Company is better off continuing on its own or should be sold to a third party.

Courts have consistently found disclosures concerning an entity's free cash flows and financial projections highly material and "***among the most highly-prized disclosures by investors***," which serve as a basis for enjoining a transaction. *In re Netsmart Tech's, Inc. S'holders Litig.*, 924 A.2d 171, 202-04 (Del. Ch. 2007). *See also, e.g.*, *Maric Capital Master Fund, Ltd. v. Plato Learning, Inc., et. al.*, C.A. No. 5402-VCS (Del. Ch. May 13, 2010) (noting that "management's best estimate of the future cash flow of a corporation that is proposed to be sold in a cash merger is clearly material information" that shareholders ought to have when deciding whether it is in their best interest to accept the proposed merger price); *Netsmart*, 924 A.2d 171 (enjoining merger until curative disclosures were made and holding that "plaintiffs have also established a probability that the Proxy is materially incomplete because it fails to disclose the projections [the financial advisor] used to perform the discounted cash flow valuation supporting its

fairness opinion."); *Burlington Indus.,* 666 F. Supp. 799 (M.D.N.C. 1987) (finding material information concerning sales figures and other internally produced information the bore on the company's growth prospects).[14]   Accordingly, Somanetics shareholders received a material benefit from the disclosure of management's free cash flows projections.

With respect to the key inputs in Leerink's *Illustrative Discounted Cash Flow Analysis*, at Plaintiffs' request, Defendants also agreed to disclose: (i) the criteria used to select the 10.0x to 14.0x range of multiples; and (ii) the material key inputs used by Leerink to calculate the weighted average cost of capital.   These undisclosed assumptions and methodologies were highly material to Somanetics shareholders' ability to assess the credibility of Leerink's analyses and the fairness of the consideration being offered in the Merger.   *In re Pure Res., Inc., S'holders Litig.*, 808 A.2d 421, 449 (Del. 2002) ("[S]tockholders are entitled to a fair summary of the substantive work performed by the investment bankers upon whose advice the recommendations of their board as to how to vote on a merger or tender rely.").

Indeed, Delaware courts have held that:

[W]hen a banker's endorsement of the fairness of a transaction is touted to shareholders [as it was here], ***the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.***   Only providing some of that information is insufficient to fulfill the duty of providing a 'fair

---

[14]    *See also Sealy Mattress Co. of New Jersey, Inc. v. Sealy, Inc.*, 532 A.2d 1324, 1339-40 (Del. Ch. 1987) (finding material omissions in proxy materials that failed to disclose the company's future prospects, its business plans, or projected revenues or income); *In re Staples, Inc. S'holder Litig*, 792 A. 2d 934, 958 (Del. Ch. 2001) (defendants "urged" to include management's financial projections in the proxy statement); *Weinberger v. Rio Grande Indus., Inc.*, 519 A.2d 116 (Del. Ch. 1986); *In re Anderson*, 519 A.2d 680 (Del 1986); *Neubauer v. Goldfarb*, 108 Cal. App. 4th 47 (2003) (citations omitted).

> summary of the substantive work performed by the investment bankers
> upon whose advice the recommendations of the[] board as to how to vote .
> . . rely.'

*Netsmart*, 924 A.2d at 203-204 (emphasis added). Thus, disclosure of these key inputs

and methodologies provided Somanetics stockholders with key information concerning

the credibility of Leerink's analyses.

As a result of Plaintiff's demands, Defendants agreed to disclose, for each

company in the *Selected Companies Analysis*, the EV/Revenue, EV/EBITDA and P/E

multiples. Defendants also disclosed in the *Selected Transactions Analysis*, the long-term

and near-term revenue, EBITDA and P/E transaction multiples observed for each

company. As described in more detail above, the multiples of the companies used in

these analyses were vital because they ultimately were the driver for the multiples

Leerink applied to calculate Somanetics' value.

Further, the Supplemental Disclosures negotiated between the parties also

included material facts concerning the process the Company employed in connection

with the sale of Somanetics to Covidien. As a direct result of Plaintiff's demands,

Defendants disclosed: (i) the number of companies that met the criteria of being potential

buyers; (ii) the reasons Leerink contacted only three companies in the process to

determine whether there was any serious interest other than from Covidien; and (iii) the

reasons the Board believed other parties would not offer a higher price for the Company

and, thus, the Board did not attempt to contact such parties as part of a "market check."

The Supplemental Disclosures related to the sales process were important because

they provided important detail on the depth and quality of the sale process that led to the

merger and the decision-making process of the Board. Generally, the broader and deeper

a sales process, the more assurance stockholders have that a transaction will reasonably result in the highest possible value at the time and that stockholder value is maximized. *Pure Res.,* 808 A.2d at 448; *see also Netsmart*, 924 A.2d at 209 n. 120 ("When directors describe their decision-making process leading up to a merger, they must do so in a fair and balanced way.").  Moreover, Defendants were required to provide stockholders with "'a balanced, truthful account of all matters'" that were disclosed in the Recommendation Statement.  *Pure Res.,* 808 A.2d at 448 (quoting *Malone v. Brincat*, 722 A.2d 5, 12 (Del. 1998).  Without such information, stockholders would have been unable to make an informed decision of whether to tender their shares because it would have been impossible for stockholders to assess the credibility of the sales process.

Plaintiffs' counsel's ability to obtain full disclosure was particularly significant in the Actions because the production of documents and disclosure of the omitted material information was hotly contested in motion practice.  But instead of pressing their arguments, Defendants agreed to issue the Supplemental Disclosures that corrected the deficiencies.

### B.    The Value of the Services on an Hourly Basis

Plaintiffs' counsel marshaled considerable resources and expended substantial effort researching, investigating and prosecuting the Actions on an extremely tight schedule in light of the short period between when Covidien commenced the Tender Offer on June 25, 2010 and the expiration of the Tender Offer on July 27, 2010.  The work performed by Plaintiffs' counsel included, *inter alia*:  (i) researching the factual basis of the Actions; (ii) analyzing the complex Tender Offer and Merger; (iii) conducting extensive legal research concerning the principal corporate law issues in the

42

case; (iv) reviewing and analyzing the Company's and Covidien's SEC filings, including the Recommendation Statement and its numerous amendments and the Tender Offer Statement; (v) preparing and filing their respective Complaints; (vi) drafting and serving demand letters; (vii) researching and drafting expedited proceedings and TRO motions; (viii) numerous discussions with counsel for various parties on the defense side; (ix) conducting discovery which included reviewing non-public Somanetics documents pertaining to the Merger; and (x) negotiating the Supplemental Disclosures.

Moreover, Plaintiffs' counsel in the Actions, at their own expense, retained financial experts to assist in deciphering the various complex financial, valuation and disclosure issues involved in this complex corporate transaction. The legal services provided were all reasonable and necessary to effectively prosecute this case. Thus, the significant time and labor involved in this complex Action support the fee request.

The hourly rates charged by Plaintiffs' counsel in the Actions are reasonable and consistent with the prevailing market rates in the relevant locations in which the attorneys practice law. As the Supreme Court has stated, an award of attorneys' fees must be calculated according to "the prevailing market rates in the relevant community . . . ." *Blum v. Stenson,* 465 U.S. 886, 895 (1984). Such rates also reflect the reputation, experience, skill, and successful records of Plaintiffs' counsel. Plaintiffs' counsel managed their Actions in an orderly and organized fashion and maintained a focus on the central issues in this case. Where appropriate, attorneys with lower billing rates were used, and associates performed as much of the work as possible, rather than senior partners.

43

Specifically, the hourly rates charged by Levi & Korsinsky a New York firm, range from $390 to $685 per hour.  The rates for Faruqi & Faruqi, LLP, also a New York-based firm, are partners - $450 - $695.  The hourly rates charged by Holzer Holzer & Fistel, LLC, an Atlanta firm, range from $365 to $595 per hour.   Such rates are well within the rates typically charged by New York and Atlanta law firms.  *See, e.g., In re Converse Tech., Inc., Sec. Litig.*, No. 06-CV-1825 (NGG)(RER), 2010 WL 2653354, at *4 (E.D.N.Y. 2010) (finding rates ranging from $125 to $880 per hour reasonable New York rates); *In re Telik, Inc. Sec. Litig.*, 576 F.Supp.2d 570, 589-90 (S.D.N.Y. 2008) (rates ranging between $300 and $750 per hour reasonable in New York).  *See also* "Firm-by-Firm Sampling of Billing Rates Nationwide,*"* NAT'L L.J. at S2 (Dec. 12, 2005) (discussing summary of partner billing rates at various New York defense firms litigating securities class actions ranged between $530 to $830 per hour).  Moreover, these New York and Atlanta rates fall well below the range of New York and Atlanta rates found in the December 7, 2009 nationwide sampling of hourly billing rates published in the *National Law Journal*, and the March 8, 2010 article from the Fulton County Daily Report entitled "$900 lawyers aren't just a New York thing."  Hopkins Decl., Ex. 17, 18. In addition, Plaintiff's counsel are predominantly, if not exclusively, engaged in plaintiff-oriented class action, securities and derivative service, and rates in the *National Law Journal* Survey are not necessarily those "actually paid to counsel by paying clients" given the contingent and representative nature of Plaintiffs' counsel's work.  *See Reiter v. Metrop. Transit Auth.*, No. 01 Civ. 2762, 2004 U.S. Dist. LEXIS 18167, at *14 (S.D.N.Y. Sept. 14, 2004).

44

Similarly, the hourly rates charged by The Miller Law Firm, which range between $295.00 and $595.00, and Stephen Wasinger, which range between $195.00 to $450.00, are well within the range typically charged for this type of complex class action litigation and have been approved by this Court in other cases. *See, e.g.*, Hopkins Decl., Ex.13, *Egleston v. Heartland Indus. Partners, L.P.*, Case No. 06-cv-13555 (E.D. Mich. June 10, 2010); *id.*, Ex. 14, *In re Gen. Motors Sec. & Deriv. Litig.*, Case No. 06-MD-1749 (E.D. Mich. Jan. 6, 2009); *Id.*, Ex. 15, *In re Proquest Sec. Litig.*, Case No. 06-cv-11579 (E.D. Mich. Mar. 30, 2009); *Id.*, Ex. 16, *Wong v. T-Mobile USA, Inc.*, Case No. 05-cv-73922 (E.D. Mich. Dec. 31, 2007).

In sum, counsel for plaintiffs in the Federal Action and the State Action collectively spent 1,035.30 hours and incurred $24,018.00 of unreimbursed expenses pursuing this litigation, including expert fees for which they have not yet been compensated. *See* Hopkins Decl. Exhibits 4-9 (charts of attorneys' lodestar and expenses). This time does not include the hours and labor spent negotiating and finalizing the MOU and Stipulation, as well as the briefing and filing of this Motion and the Preliminary Approval Motion.

The fee and expense award requested in this case is consistent with fees awarded in similar cases in which plaintiffs' counsel obtained for the benefit of the class the disclosure of management's free cash flow projections. *See, e.g., Noven*, C.A. No. 4732-CC at 60 (stating that in Vice Chancellor Laster's opinion, the single disclose of free cash flow projections is worth $450,000 in attorneys' fees), attached to the Hopkins Decl. as Ex. 19. *See also, Ubaney v. Rubinstein, et. al.*, C.A. No. 5459-VCL (Del. Ch. Dec. 1 2010) (approving attorneys' fee award of $500,000 (and multiplier of 2) for disclosures

and noting that "certainly [free cash flow] projections were a good get"), Hopkins, Decl. 20; *In re Interactive Data Corp. S'holders Litig.*, C.A. No. 5498-CC (Del. Ch. Nov. 4, 2010) (awarding fees of $612,500 in disclosure settlement). Moreover, the fee award requested in this case is modest and well within the range of fees recently awarded in similar cases. *See, e.g.*, *Oakmont Management, LLC v. Evanson, et. al.*, C.A. No. 24-C-10-001301 (Md. Cir. Dec. 13, 2010) (awarding $750,000 for disclosure settlement); *County of York Employees Retirement Plan v. Merrill Lynch & Co., Inc.*, No. C.A. 4066-VCN, slip op. (Del. Ch. Aug. 31, 2009) (awarding $950,000 for disclosure settlement).[15]

The requested fee award is representative of a highly efficient effort on the Settlement Class's behalf. Plaintiffs' counsels' fee request is approximately $232,267 less than their total lodestar and expenses, or a negative multiplier of 1.57, further demonstrating the reasonableness of their request.

---

[15]     *See also, e.g.*, *In re Wind River Sys., Inc. S'holder Litig.*, No. C.A. 4674-VCP, slip op. (Del. Ch. Dec. 8, 2009) (awarding $700,000 for disclosure-only settlement); *In re Wm. Wrigley Jr. Co. S'holders Litig.*, No. C.A. 3750-VCL, slip op. (Del. Ch. Jan. 27, 2009) (uncontested $690,000 award of attorneys' fees and expenses approved in a non-monetary settlement); *Henkel v. Battista*, No. C.A. 3419-VCN, slip op. (Del. Ch. Dec. 16, 2008) ($1.1 million awarded in attorneys' fees and expenses for additional disclosures); *In re James River Group, Inc. S'holder Litig.*, No 3173-VCL, 2008 WL 160926, at *2 (Del. Ch. Jan. 8, 2008) (court awarded $400,000 in fees based on supplemental disclosures, which included projections underlying the financial advisor's analysis); *In re The Trizetto Group, Inc. S'holders Litig.*, No. C.A. 3694-VCN, slip op. (Del. Ch. Dec. 4, 2008) ($950,000 for disclosures and proportional voting provision agreement); *Globis Capital Partners, L.P. v. SafeNet, Inc.*, No. C.A. 2772-VCS, slip op. (Del. Ch. Dec. 20, 2007) (awarding $1.2 million in fees and expenses); *In re Jacuzzi Brands, Inc. S'holders Litig.*, No. C.A. 2477-CC, slip op. (Del. Ch. June 26, 2007) (awarding $725,000 in fees and expenses for corrective disclosure); *In re Genencor Int'l Inc. S'holders Litig.*, No. 1052-N, slip op. (Del. Ch. June 2, 2005) ($450,000 in fees and expenses awarded for supplemental disclosures); *In re Maxus Energy Corp. S'holder Litig.*, No. 14079, slip op. (Del. Ch. Sept. 12, 1995) ($800,000 in fees and expenses awarded for a single disclosure); *Gilmartin v. Adobe Res. Corp.*, No. 12467, slip op. (Del. Ch. June 29, 1992) ($750,000 in fees and expenses awarded for a single disclosure).

C.      The Contingent Nature of the Litigation

The efforts of Plaintiffs' counsel in the Actions, to date, have been undertaken without any compensation, and the award of attorneys' fees has been wholly contingent upon the result achieved.  Indeed, Plaintiffs' counsel risked from the outset a substantial amount of attorney time in prosecuting the Actions.

It is well established that where, as here, counsel assumes the risk of non-payment, plaintiffs' counsel should be rewarded for undertaking risky contingent fee litigation.  In *In re Prudential-Bache Energy Income P'ships Sec. Litig*, No. 888, 1994 WL 202394, at *8 (E.D. La. May 18, 1994), the court noted:

> In complex securities class actions and shareholder derivative litigation, able counsel for plaintiffs can be retained only on a contingent basis.  A large segment of the investing public would be denied a remedy for violations of the securities laws and breaches of fiduciary duty by public companies and those entrusted with their stewardship if contingent fees awarded by the courts did not fairly and adequately compensate counsel for the services provided, the serious risks undertaken and the delay before any compensation is received. Filing of contingent lawsuits in this connection should not be chilled by the imposition of fee awards which fail to adequately compensate counsel for the risks of pursuing such litigation and the benefits which would not otherwise have been achieved but for their persistent and diligent efforts.

*Id.*

As discussed above, Plaintiffs' counsel undertook this litigation solely on a contingent basis without any guarantee of being paid for their efforts on behalf of Plaintiffs and the Settlement Class.  Accordingly, they should be rewarded for skillfully litigating this case to a resolution before trial, thus "sav[ing] the parties and the Court significant time, expense, and effort of further litigation."  *Cohn v. Nelson*, 375 F. Supp. 2d 844, 862 (E.D. Mo. 2005).

47

### D.    The Complexity of the Litigation

From the outset, the nature of the claims asserted in this litigation required Plaintiffs' counsel to research and analyze complex issues under the federal securities laws, as well as state corporate breach of fiduciary duty laws and the validity of the specific terms of the Merger Agreement. *Manners*, 1999 WL 33581944, at *31 (finding securities class actions involve complex issues of law and financial concepts). Moreover, Plaintiffs' counsel, in conjunction with their financial and valuation experts, were required to analyze difficult valuation issues and techniques employed by the Leerink, the Company's financial advisor, such as a comparable companies analysis and discounted cash flow analysis, to assess the credibility of Leerink's analyses and whether the consideration offered was fair. Plaintiffs' counsel were also required to perform such research and analyses under very tight time constraints in light of the imminent expiration of the Tender Offer, further adding to the difficulty of prosecuting the claims asserted in the Actions.

Had plaintiffs litigated these complex issues through trial, it would have required expert testimony regarding complex pricing and valuation issues, extensive discovery and proof that the Board breached their fiduciary duties to Somanetics' public stockholders and failed to exercise prudent business judgment in approving the Merger.

Thus, it is without question that the claims litigated by Plaintiffs' counsel were complex.

### E.    The Professional Skill and Standing of Counsel on Both Sides

The skill required and the experience, reputation and ability of the attorneys also support the requested fee award. To successfully pursue Plaintiffs' claims, counsel had

48

to possess expertise in the law governing the duties of officers and directors in the context of a tender offer and merger.  Plaintiffs' Counsel assembled a team that possessed the necessary expertise.  These combined talents allowed counsel to plead claims and theories of liability to pursue the Actions, at a vigorous pace, analyze the strength and weaknesses of these claims and bring Defendants to the negotiating table to release the Supplemental Disclosures, all to the benefit of Somanetics' shareholders.

Plaintiffs' counsel are nationally recognized law firms with extensive experience litigating complex securities and mergers and acquisitions class actions such as this.  As a result of their experience, skill and reputation in this area, Plaintiffs' counsel have achieved significant acclaim for their work and maintain impeccable professional credentials.  *See* Hopkins Decl., Exhibits 10-12 (respective firm resumes of Plaintiffs' counsel).  Further, Plaintiffs' counsel have also successfully obtained significant relief for stockholders in numerous similar class actions, including additional monetary recovery, as well as material structural changes to merger agreements and negotiated material supplemental disclosures for the benefit of stockholders in countless merger cases around the country in both federal and state courts.

The experience of Plaintiffs' counsel enabled them to identify complex issues in this case and to formulate strategies to prosecute the Actions effectively and expeditiously and to confer a substantial benefit to Somanetics stockholders.  Indeed, if the Supplemental Disclosures had not been provided prior to the Tender Offer, Somanetics stockholders would have been forced to make an uninformed decision of whether to tender their shares. The Supplemental Disclosures are a direct result of the

49

experience, reputation, ability and hard work of Plaintiffs' counsel in tender offer cases such as this.

The professional skill and standing of opposing counsel is also important in evaluating the quality of services rendered by Plaintiffs' counsel. *See, e.g., In re Delphi Corp. Sec., Derivative & ERISA Litig.*, 248 F.R.D. 483, 504 (E.D. Mich. 2008); *In re Aetna Inc. Sec. Litig.*, No. 1219, 2001 WL 20928 (E.D. Pa. Jan. 4, 2001); *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 195 (E.D. Pa. 2000). Plaintiffs' counsel faced formidable opposition by skilled lawyers from well-known, national law firms with significant experience in takeover litigation. Thus, the successful prosecution of the Actions required a high degree of skill and dedication by Plaintiffs' counsel.

Accordingly, this factor weighs in favor of approving the requested fee award.

**F.      Society's Stake in Awarding Fees**

The benefit to society factor is also satisfied in this case. Without compensation to those who are willing to undertake the inherent complexities and unknowns of complex class action litigation, enforcement of the federal securities and state corporate governance laws would be jeopardized. *Cardizem,* 218 F.R.D. at 534 ("Encouraging qualified counsel to bring inherently difficult and risky but beneficial class actions like this case benefits society."); *In re Rio Hair Naturalizer Prods. Liab. Litig.*, No. MDL 1055, 1996 WL 780512, at *17 (E.D. Mich. Dec. 20, 1996) (same); *Smillie,* 710 F.2d at 275 (citing *Mills*, 396 U.S. at 396); *Clevenger v. Dillards, Inc.,* No. C-1-02-558, 2007 WL 764291, at *9 (S.D. Ohio Mar. 9, 2007) (noting the "public interest" in ensuring that attorneys willing to take on complex litigation are adequately paid so that they and other attorneys will continue to take on such cases); *Manners*, 1999 WL 33581944 (same).

50

Moreover, as the United States Supreme Court has recognized, without class actions, small claimants individually lack the economic resources to vigorously litigate their rights. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 161 (1974). Thus, attorneys who take on class action matters enabling litigants to pool their claims provide a huge service to the judicial process.

## VI.  CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court finally approve the proposed Settlement, that the Settlement Class be certified for purposes of settlement, and that Plaintiff's attorneys be awarded $315,000.00 for their fees in this matter (including reimbursement of expenses).

Dated:  September 27, 2011          THE MILLER LAW FIRM
                                    /s/ Marc L. Newman
                                    Marc L. Newman (P51393)
                                    Miller Building
                                    950 West University Drive
                                    Suite 300
                                    Rochester, MI 48307
                                    Telephone: (248) 841-2200
                                    Facsimile: (248) 652-2852
                                    mln@millerlawpc.com

                                    *Liaison Counsel for Plaintiff*

                                    LEVI & KORSINSKY, LLP
                                    Eduard Korsinsky, Esq.
                                    Shannon L. Hopkins, Esq.
                                    W. Scott Holleman, Esq.
                                    30 Broad Street, 15th Floor
                                    New York, NY 1004
                                    Tel.  (212) 363-7500

                                    THE BRISCOE LAW FIRM, PLLC
                                    Willie C. Briscoe
                                    8117 Preston Road, Suite 300
                                    Dallas, Texas 75225
                                    Tel.  (214) 706-9314

                                    CASH, POWERS, TAYLOR, LLC
                                    Patrick Powers
                                    Mark Taylor
                                    8150 North Central Expressway
                                    Suite 15751
                                    Dallas, Texas 75206
                                    Tel.:  (214) 239-8900

                                    *Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 27, 2011, I electronically filed the foregoing document with the Clerk of the Court using the ECF System which will send notification of such filing to all counsel on record.

- **Jayson E. Blake**
jeb@millerlawpc.com, sed@millerlawpc.com, jns@millerlawpc.com

- **David H. Fink**
dfink@finkandassociateslaw.com, afink@finkandassociateslaw.com

- **Matthew F. Leitman**
Leitman@millercanfield.com, hausler@millercanfield.com, Kaszubski@millercanfield.com

- **Marc L. Newman**
mln@millerlawpc.com, jns@millerlawpc.com, asl@millerlawpc.com

- **Arthur Thomas O'Reilly**
aoreilly@honigman.com, ahatcher@honigman.com, cwalmsley@honigman.com

- **Bruce L. Segal**
bsegal@honigman.com, klarson1@honigman.com

THE MILLER LAW FIRM

/s/ Marc L. Newman
Marc L. Newman (P51393)
Miller Building
950 West University Drive
Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
mln@millerlawpc.com

***Liaison Counsel for Plaintiff***